IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 JAN 17  PM 1: 24

CLERK _____
SO. DIST. OF GA.

RANDY HOOKS,                          )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )    CV 605-065
                                      )
GLENN RICH, Warden, et al.,           )
                                      )
          Defendants.                 )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

The captioned matter, brought pursuant to 42 U.S.C. § 1983, is before the Court on

Defendant Deputy Warden R.D. Collins ("Collins")'s motion to dismiss (doc. no. 4), which

the Court has converted to a motion for summary judgment (see doc. no. 13).  Defendant

Warden Glenn Rich ("Rich") has also filed a motion "for judgment on the pleadings," in

which he adopts Collins's motion for summary judgment as his own. (Doc. no. 10). Plaintiff

opposes Defendants' motions. (Doc. no. 6).  For the reasons below, the Court **REPORTS**

and **RECOMMENDS** that the motions (doc. nos. 4, 10) be **GRANTED IN PART** and

**DENIED IN PART**.

## I. BACKGROUND

A.    **Plaintiff's Complaint**

Plaintiff, an inmate incarcerated at Rogers State Prison ("Rogers"), in Reidsville,

Georgia, filed the instant complaint by and through counsel on July 13, 2005, naming

Collins, Rich, and Defendant Lieutenant Reginald T. Langston ("Langston") as Defendants.

(Doc. no. 1, p. 2). According to Plaintiff's complaint, on October 11, 2003, Langston, a "Corrections Supervisor" at Rogers, handcuffed Plaintiff, took him to a shower stall, and brutally beat him. (Id. at 3). During this alleged beating, Langston also reportedly removed Plaintiff's clothing in order to humiliate him. (Id. at 4).

Plaintiff also alleges that his beating at the hands of Langston is not an isolated incident, but that there is a "history, pattern, and practice" at Rogers in which inmates are taken to "shower stalls in lockdown isolation" and sadistically beaten.[1] (Id. at 5). Furthermore, Plaintiff avers that Collins, the Deputy Warden of Security at Rogers, and Rich, the Warden of Rogers, were not only "deliberately indifferent" to a "history, pattern, and practice of attacks," but that they actually were aware of and condoned repeated incidents of excessive force. (Id.). In addition, Plaintiff avers that Collins and Rich should be held responsible for Plaintiff's beating because they are "the parties directly responsible for the security staffing and other security measures" at Rogers. (Id. at 6).

Finally, according to Plaintiff, Defendants' actions amounted to torture in violation of 18 U.S.C. § 2340, et. seq., cruel and unusual punishment in violation of the Eighth Amendment, as well as violations of unspecified provisions of the Georgia state constitution. (Id. at 7-9). Plaintiff seeks compensatory and punitive damages. (Id. at 10).

---

[1]It should be noted that the instant case is one of several pending suits filed by inmates at Rogers against Collins, Rich, and Langston. See Jamison v. Rich, CV 605-066 (S.D. Ga. July 13, 2005); Priester v. Rich, CV 605-071 (S.D. Ga. July 27, 2005); Langford v. Rich, CV 605-073 (S.D. Ga. July 27, 2005); Stanley v. Rich, CV 605-075 (S.D. Ga. July 27, 2005); Favors v. Rich, CV 605-089 (S.D. Ga. Aug. 16, 2005). Rich and Collins are also defendants in a number of other prisoner cases regarding the alleged use of excessive force by other corrections officers at Rogers. See Freeman v. Rich, CV 605-072 (S.D. Ga. July 27, 2005); Gladmon v. Rich, CV 605-074 (S.D. Ga. July 27, 2005); Harper v. Rich, CV 605-76 (S.D. Ga. July 27, 2005); Boyd v. Rich, CV 605-87 (S.D. Ga. Aug. 16, 2005); Crowder v. Rich, CV 605-088 (S.D. Ga. Aug. 16, 2005); Benton v. Rich, CV 605-090 (S.D. Ga. Aug. 16, 2005).

**B.    Arguments**

In their instant motions, Collins and Rich argue that Plaintiff's claims against them fail as a matter of law because: 1) 18 U.S.C. § 2340 does not provide a basis for a private right of action (doc. no. 5-1, pp. 2-10); 2) Plaintiff's attempt to bring a state law tort action must fail because he has failed to comply with the mandates of the Georgia Tort Claims Act (id. at 10-16); and 3) Plaintiff's remaining § 1983 claims against Collins and Rich must fail because Plaintiff failed to properly exhaust his administrative remedies prior to filing suit as required by Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a).  (Id. at 16-20).

In contending that Plaintiff failed to properly exhaust administrative remedies, Collins and Rich do not point out any procedural flaw (e.g., untimeliness or failure to complete the administrative process) in Plaintiff's resort to administrative remedy. Rather, Collins and Rich contend that Plaintiff's administrative grievance was insufficient under § 1997e(a) because Plaintiff's grievance regarding his claims in this case mentioned only the alleged October 2003 incident of excessive force by Langston.  (Id. at 18-19).  It did not name Collins or Rich; nor did it allude to any pattern or practice of abusing inmates.  (Id.). Before assessing the legal merit of this contention, it will be helpful to explain the grievance procedure available to Plaintiff and describe Plaintiff's utilization of that process.

**C.    The Administrative Grievance Process**

In support of their motions, Collins and Rich have filed the current version of Georgia Department of Corrections Standard Operating Procedure ("SOP") IIB05-0001 § VI, which governs the administrative grievance procedure available to Georgia inmates. Def.'s Ex. 1 SOP IIB05-0001 § VI(D)(Eff. date June 1, 2004)(attached at doc. no. 5).  However, as the SOP has been revised numerous times in recent years, the Court will rely on the version of

3

the SOP IIB05-0001 § VI in effect at the time of Plaintiff's alleged beating in October 2003.[2,3] Under then-existing SOP IIB05-0001 § VI(D), an inmate had five business days (a limit that could be waived for good cause) "from the date the inmate discovered, or reasonable should have discovered, the incident giving rise to the complaint" to file a grievance; the Warden then had thirty (30) days to review and respond to the grievance. Dennis v. Lingard, CV 603-136, doc. no. 19, Ex. H, (S.D. Ga. Apr. 15, 2004), SOP IIB05-0001 § VI(D)(5)(Eff. date May 1, 2003). Once the Warden provided a response, the inmate could appeal the response to the Office of the Commissioner by completing a Grievance Appeal Form and submitting it and the original grievance form to the inmate's assigned counselor or Grievance Coordinator. (Id. § VI(D)(5) (k)-(n)). The Commissioner's Office

---

[2]Despite Defendants' failure to file the relevant version of the SOP in the instant case, the Court may take judicial notice of the 2003 version, which has been submitted to the Court numerous times in the past. See, e.g., Dennis v. Lingard, CV 603-136, doc. no. 19, Ex. H (S.D. Ga. Apr. 15, 2004); United States v. Rey, 811 F.2d 1453, 1457 n.5 (11th Cir.1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

[3]The Court is also aware that Collins and Rich have provided the affidavit of Sarah Draper, "Director of Inmate Affairs," which purports to describe the inmate grievance procedure at Rogers and Plaintiff's use of that procedure. See Def.'s Ex. A (attached at doc. no. 5). Unfortunately, the Court cannot rely upon this affidavit. First, Ms. Draper's affidavit describes the grievance procedure under the current SOP, rather than the version in effect at the time of the alleged beating. See id. There are significant differences between the 2003 version of the SOP and the current one. For example, the current SOP requires the filing of a written "informal grievance" as a prerequisite to pursuing formal administrative remedy. See Def's Ex. A, p. 3; Def.'s Ex. 1; SOP IIB05-0001 § VI(B)(Eff. date June 1, 2004)(attached to doc. no. 5). Although the 2003 version of the SOP "encourage[d] that, whenever possible, inmate complaints and grievances should be resolved on an informal basis without the filing of a formal grievance," it did not provide for a written informal grievance procedure. CV 603-136, doc. no. 19, Ex. H; SOP IIB05-0001 §VI (D)(Eff. date May 1, 2003).

In addition, Ms. Draper's affidavit describes the grievance of "Inmate Michael Jamison," the plaintiff in a different case. See Def.'s Ex. A, p. 5; Jamison v. Rich, CV 605-066 (S.D. Ga. July 13, 2005). Thus, Ms. Draper's affidavit does not furnish reliable information regarding Plaintiff's available administrative remedies and his use of those remedies. The Court is aware that a separate affidavit from Ms. Draper has been filed in Jamison, and that this affidavit does describe Plaintiff's use of the grievance process. See CV 605-066, doc. no. 5, Def.'s Ex. A, p. 5. The Court will address the contentions of that affidavit *infra* at footnote 4.

4

had ninety (90) days after receipt of the appeal to respond. Id. § VI(D)(5)(o). The grievance

procedure terminated upon the issuance of a response from the Commissioner's Office. Id.

**D.      Plaintiff's Resort to Administrative Remedy**

On October 17, 2003, Plaintiff filed a grievance complaining of an alleged beating

at the hands of Langston on October 11, 2003.[4] Def.'s Ex. 2, p. 3.  As Collins and Rich have

correctly noted, the grievance did not name them or allege that the October 11th beating was

not an isolated incident.  Id.  Collins denied the grievance on October 24, 2003.  Id.  On

October 28, 2003, Plaintiff appealed the denial to the Office of the Commissioner and

specifically stated:

> I was physically abused by Lt. Langston and I am not the first. . . I have
> spoken to staff members and other inmates, including medical staff, who
> have told me that Lt. Langston has a long history of physically abusing
> inmates.

Def.'s Ex. 2, p. 7. Defendant's appeal was subsequently denied on December 12, 2003. Id.

at 2.

Having clarified the factual background of the case, the Court turns to the merits of

the motion for summary judgment.

## II. DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material

---

[4]The Court is aware that in an affidavit apparently mistakenly filed in Jamison v. Rich, CV
605-066 (S.D. Ga. July 13, 2005), by Sarah Draper, "Director of Inmate Affairs," contends that
Plaintiff's grievance was untimely filed. See CV 605-066, doc. no. 5, Def.'s Ex. A, p. 5. The Court
disagrees. October 11, 2003 was a Saturday. Thus, Plaintiff's grievance, filed on Friday, October
17, 2003, was submitted within five business days of the incident as required by SOP IIB05-0001
§ VI(D)(5)(Eff. date May 1, 2003). Regardless, Plaintiff's grievance was not denied as untimely,
but on the merits, and Rich and Collins have not argued before this Court that the grievance was
untimely.

fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Applicable substantive law identifies which facts are material in a given case.[5] <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials

on file, that there are no genuine issues of material fact to be decided at a trial. <u>Clark v.</u>

<u>Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests

with the <u>movant</u>, to prevail at the summary judgment stage, the movant must show that, "on

all the essential elements of its case . . . , no reasonable jury could find for the nonmoving

party." <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th Cir. 1991)

(<i>en banc</i>). On the other hand, if the <u>non-moving</u> party has the burden of proof at trial, the

movant may prevail at the summary judgment stage either by negating an essential element

of the non-moving party's claim or by pointing to specific portions of the record that

demonstrate the non-moving party's inability to meet its burden of proof at trial. <u>Clark</u>, 929

F.2d at 606-08 (explaining <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970) and <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot

meet its burden at trial is not sufficient. <u>Clark</u>, 929 F.2d at 608. Evidence presented by the

movant is viewed in the light most favorable to the non-moving party. <u>Adickes</u>, 398 U.S.

at 157.

If the moving party carries the initial burden, then the burden shifts to the non-

moving party "to demonstrate that there is indeed a material issue of fact that precludes

---

[5]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

6

summary judgment." <u>Clark</u>, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255 (quoting <u>Adickes</u>, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> at 248.

**B.    Plaintiff Properly Exhausted Administrative Remedies.**

As the exhaustion of administrative remedies is a prerequisite to filing suit under the PLRA, exhaustion is a threshold inquiry which should be answered before addressing Defendants' other arguments. The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. <u>Porter v. Nussle</u>, 534 U.S. 516, 520 (2002). Furthermore, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. <u>Alexander v. Hawk</u>, 159 F.3d 1231, 1325-26 (1998). Simply put, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a).

To properly exhaust his claims, the inmate must satisfy any and all procedural requisites, including "administrative deadlines." <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1154 (11th Cir. 2005). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. <u>Id.</u> at 1159. Rich and Collins do not argue that Plaintiff failed to satisfy the procedural requirements of the grievance process. Instead, they argue that the content of

7

Plaintiff's grievance was insufficient to meet the substantive requirements of § 1997e(a).

In <u>Brown v. Sikes</u>, the Eleventh Circuit held "that 42 U.S.C. § 1997e(a) requires a prisoner to provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved in the alleged deprivations, as the prisoner reasonably can provide." 212 F.3d 1205, 1210 (11th Cir. 2000). Rich and Collins argue that because Plaintiff's initial grievance did not specifically name them or allege a pattern of abuse at Rogers, Plaintiff failed to satisfy § 1997e(a) and his suit must be dismissed. (Doc. no. 5, pp. 19-20; doc. no. 7, pp. 3-4). In opposition to Defendants' motion, Plaintiff argues: 1) Plaintiff's grievance sufficiently put prison officials on notice of his claims to satisfy § 1997e(a); 2) it is not always practical to require an inmate to name all of the officials who may be constitutionally responsible for the alleged wrong; and 3) at the time Plaintiff filed his initial grievance, he "did not and could not have known" of the alleged pattern of abuse and the culpability of Rich and Collins. (Doc. no. 6, pp. 6-9). Plaintiff has the better arguments.

First, the PLRA did not require Plaintiff to provide in his initial grievance information he could not have reasonably obtained at the time. <u>Brown</u>, 212 F.3d at 1210. Thus, Plaintiff's argument that he did not know about the alleged pattern of abuse until after filing his grievance is a persuasive one, if it may be believed. The exhaustion requirement does not "shut[] the courthouse door to a prisoner who, at the time he filed his grievance, did not know and could not readily ascertain the identity of the individuals responsible for the alleged injury or deprivation." <u>Id.</u> at 1208.

In this regard, the Court reminds the parties that at this stage of the litigation, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

8

in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59).  The

evidence before the Court comports with the notion that Plaintiff did not learn that the

alleged beating was part of a pattern until after he had filed his grievance.  According to

Plaintiff's administrative appeal, after filing his initial grievance he discovered that he was

not Langston's "first" victim and that in fact Langston had a "long history" of abusing

inmates. Def.'s Ex. 2, p. 7.  Upon learning this information, Plaintiff then included it in his

appeal. Id.  Thus, Plaintiff did allege that there was a pattern of abuse at Rogers during the

course of his attempt to properly exhaust the administrative process.[6]

It is conceivable that Rich and Collins may argue that Plaintiff's discovery of this

new information should have prompted him to file a new grievance specifically naming them

and describing in greater detail the alleged pattern of inmate abuse.  Besides being onerous,

such a requirement would not comport with the policy goals of the exhaustion requirement.

Section 1997e(a)'s goals are simple:

> 1) to avoid premature interruption of the administrative process; (2) to let the
> agency develop the necessary factual background upon which decisions
> should be based; (3) to permit the agency to exercise its discretion or apply
> its expertise; (4) to improve the efficiency of the administrative process; (5)
> to conserve scarce judicial resources, since the complaining party may be
> successful in vindicating rights in the administrative process and the courts
> may never have to intervene; (6) to give the agency a chance to discover and
> correct its own errors; and (7) to avoid the possibility that frequent and
> deliberate flouting of the administrative processes could weaken the
> effectiveness of an agency by encouraging people to ignore its procedures.

Johnson, 418 F.3d at 1156 (quoting Alexander, 159 F.3d at 1327).  In addition, the

---

[6]Repeated abuse by a single officer may be sufficient to constitute a pattern of abuse for
which a supervisory official may be held liable under § 1983. See, e.g., Beck v. City of Pittsburgh,
89 F.3d 966 (3d Cir. 1996)(reports of repeated incidents of excessive force by police officer
sufficient to support conclusion that policymaker knew of a pattern of abuse).

exhaustion requirement is meant to serve as a barrier to frivolous prisoner lawsuits. <u>Johnson</u>, 418 F.3d at 1157 (quoting <u>Spruill v. Gillis</u>, 372 F.3d 218, 230 (3d Cir. 2004)).

Requiring Plaintiff to start over by filing a new grievance regarding his same basic complaint (*i.e.*, his beating at the hands of Langston) simply because he discovered additional facts regarding his claims would further none of the policy goals of the PLRA. Indeed, requiring an inmate to file additional grievances concerning essentially the same facts whenever he discovers additional information would harm the efficiency and the finality of the grievance process.

Rather, it is clear that by including his new information in his grievance appeal, Plaintiff properly furnished allegations allowing prison officials to discover the relevant facts, develop an administrative record, and correct the alleged pattern of abusive conduct by Langston. In so doing, Plaintiff satisfied § 1997e(a). Plaintiff alerted prison officials to the pattern of abuse as early in the administrative process as reasonably possible. It would be counter-intuitive and unjust to hold that § 1997e(a) required Plaintiff to do more.

Of course, it is true that Plaintiff's grievance appeal did not refer to any specific incidents or persons to substantiate his allegation of longstanding abuse by Langston. Nevertheless, it is not apparent to the Court that he reasonably had such precise information at the time, as he was proceeding without discovery or a lawyer--benefits which Plaintiff now enjoys. It is crucial to recognize that exhaustion is a requirement which an uncounseled inmate can be fairly required to satisfy.

Section 1997e(a) is not intended to result in "fact-intensive litigation" over whether every fact relevant to the cause of action was included in the grievance. <u>Goldsmith v. White</u>, 357 F. Supp.2d 1336, 1340 (N.D. Fla. 2005). "As long as the basic purposes of exhaustion

are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level." Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001). To put the matter plainly, § 1997e(a) is intended: 1) to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit, and 2) to weed out patently frivolous lawsuits. The exhaustion requirement is a gatekeeper, not a "gotcha" meant to trap unsophisticated prisoners who must navigate the administrative process *pro se*. Cf. Schneider v. Delo, 85 F.3d 335, 339 (8th Cir. 1996)(explaining in habeas context that exhaustion requirements are not meant to enable the respondent to engage in a "game of legal 'gotcha'"); Rupert v. Johnson, 83 F. Supp.2d 801, 808 (W.D. Tex. 1998)(explaining in habeas context that exhaustion requirements do not authorize "a complex game of 'gotcha' with *pro se* litigants").

In short, the Court finds Defendants' specificity argument unpersuasive. Plaintiff's claim was simple--Langston, an alleged serial abuser of inmates at Rogers, purportedly beat Plaintiff in October 2003. Having properly completed the administrative process and given prison officials a fair opportunity to respond to this claim, Plaintiff cannot reasonably be expected to do more.

On this point, the Court explicitly rejects Defendants' contention that § 1997e(a) required Plaintiff to name Rich and Collins. The Court is not persuaded that specifically naming supervisory officials like Rich and Collins--either initially or at any point in the administrative process--would have furthered the policy goals of the exhaustion requirement or better enabled corrections officials to respond to Plaintiff's claims. "The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a

11

particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004). Stated another way, "the purpose of administrative exhaustion . . . 'is to put *the administrative authority* [not potential defendants] on notice of all issues in contention and to allow the authority an opportunity to investigate those issues.'" Chandler v. Crosby, 379 F.3d 1278, 1287 (11th Cir. 2004))(quoting Griffin v. Carlin, 755 F.2d 15216, 1531 (11th Cir. 1985))(emphasis added).

Thus, at issue is whether Plaintiff's use of the administrative process gave Georgia Department of Corrections officials a "fair opportunity under the circumstances to address the problem that [would] later form the basis of th[is] suit," not whether he warned Rich and Collins of the likelihood that they would be sued. Johnson, 385 F.3d at 522. In alleging that Langston had a "long history" of abusing inmates, Plaintiff alerted corrections officials to the possibility of a problem at Rogers which extended beyond a single incident and which implicated the supervision and management of the prison. It was not necessary to name Rich and Collins. "[N]aming the warden and [deputy warden] in a grievance simply because they are the top officials in charge of the prison would not have advanced any of the policies underlying the exhaustion requirement. Everyone involved in the grievance process knows who the warden and [deputy warden] are." Brown, 212 F.3d at 1209.

Moreover, it is not apparent to the Court that at any time during the administrative process, Plaintiff knew that Rich and Collins were the specific officials to blame for the alleged pattern of abuse by Langston. In referring to a long history of inmate abuse, Plaintiff "objected intelligently" to a shortcoming in the prison's supervision and management of Langston--the exhaustion requirement does not require more. Riccardo v. Rausch, 375 F.3d

12

521, 524 (7th Cir. 2004)(internal quotation and citation omitted).  Of course, the Court

expresses no opinion as to whether Plaintiff can in fact show that Langston's pattern of abuse

was so "obvious, flagrant, rampant, and of such continuous duration" that Rich and Collins

may be held responsible for Plaintiff's alleged injury.  Braddy v. Florida Dep't of Labor &

Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998).  That is for another day.  For now,

it suffices to say that the Court determines that Plaintiff properly exhausted his administrative

remedies.[7]

## C.    Remaining Arguments

That said, Defendants' remaining arguments fall on more fertile soil.  First, the Court

agrees that 18 U.S.C. § 2340, *et. seq.* ("the statute"), a criminal statute which took effect on

November 20, 1994, when the United States became a party to the Convention Against

Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, does not give

Plaintiff a private right of action.  First, the statute explains that its prohibits torture which

occurs "outside the United States."  18 U.S.C. § 2340A.  Thus, the alleged beating in this

case does not fall within the ambit of the statute.  Second, the statute explicitly provides that

"[n]othing in this chapter . . . shall be construed as creating any substantive or procedural

right enforceable by law by any party in any civil proceeding."  18 U.S.C. § 2340B.  Thus,

the plain language of the statute forecloses Plaintiff's attempt to use it as a basis for civil

---

[7]The Court is aware that, in a similar case presently pending in this District, the Honorable
James E. Graham, United States Magistrate Judge, has recommended that the plaintiff's claims
against Rich and Collins be dismissed for failure to exhaust administrative remedies.  See Jamison
v. Rich, CV 605-066, doc. no. 18 (S.D. Ga. Dec. 15, 2005).  Nevertheless, Jamison is easily
distinguished from the instant case.  As Judge Graham noted, Jamison's grievance and appeal
contended *only* "that Defendant Langston assaulted him."  Id. at 5.  As noted herein, in the instant
case Plaintiff contended in his grievance appeal that he was one of many victims of a pattern of
abuse by Langston.  Thus, Judge Graham's analysis in Jamison does not shed light on the instant
case.

liability. The matter simply does not merit lengthy discussion. Plaintiff's claims under §
2340 fail as a matter of law.[8]

Finally, the Court also determines that Plaintiff's state law claims against Rich and
Collins should be dismissed. To begin, the Court notes that Plaintiff has not identified any
particular state law which he alleges that Rich and Collins have violated. Nor has Plaintiff
alleged any basis for the Court's jurisdiction other than 28 U.S.C. § 1331 and 42 U.S.C. §
1983. (Doc. no. 1, p. 2). To the extent Plaintiff argues that a violation of state law may give
rise to a claim under § 1983, the Court disagrees. "While the violation of state law may (or
may not) give rise to a state tort claim, it is not enough by itself to support a claim under §
1983." Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002). "Section 1983 does not
create a remedy for every wrong committed under the color of state law, but only for those
that deprive a plaintiff of a federal right." Id.

Thus, conduct which violates state law does not give rise to a claim under § 1983
unless that conduct also violates a federal right. See Harden v. Pataki, 320 F.3d 1289, 1293
(11th Cir. 2003); Miller v. Carson, 563 F.2d 757, 761 n.7 (5th Cir. 1977). Accordingly, to
the extent Plaintiff attempts to bring state law claims under § 1983, he must fail. Simply put,
the Court's jurisdiction over state law claims cannot be rooted in § 1983 (or perhaps better,
the Court's federal question jurisdiction under 28 U.S.C. § 1331), but must come from some
other source-- i.e., the Court's diversity jurisdiction (28 U.S.C. § 1332) or its supplemental
jurisdiction (28 U.S.C. § 1367). Of course, as Plaintiff's allegations plainly state a violation

---

[8]At any rate, the Court notes that Plaintiff's attempt to bring a private right of action under
§ 2340, et. seq., while novel, is not necessary to afford Plaintiff a full remedy. The Constitution
surely proscribes the torture of state prisoners. See, e.g., Chandler, 379 F.3d at 1289. Plaintiff's
inexplicable resort to criminal statutes and treaties is needless.

14

of the Eighth Amendment, the complaint states a viable §1983 claim on that basis.

That said, since Plaintiff's ostensible state law tort claims undoubtedly form part of "the same case or controversy" as the alleged constitutional violations, the Court may appropriately exercise subject matter jurisdiction over the state law claims. 28 U.S.C. § 1367(a). Having addressed the proper basis for the Court's jurisdiction over the state law claims, the Court turns to the merits of Defendants' argument. Rich and Collins aver that any state law claims against them are governed--and, in this instance, barred--by the Georgia Tort Claims Act. (Doc. no. 5, pp. 10-16). Specifically, Rich and Collins aver that, because they were state employees acting within the scope of their employment during the events in question, the Georgia Tort Claims Act immunizes them from liability for violations of state law. (Id. at 12-13 (quoting O.C.G.A. 50-21-25(a)).

In response, Plaintiff argues that the Georgia Tort Claims Act cannot be applied to this action because it is brought pursuant to § 1983. (Doc. no. 6, pp. 15-16). He does not argue that Rich and Collins were not acting within the scope of their official duties. Nor has he produced any evidence regarding the issue.

While it is true that state law cannot provide a defense to Plaintiff's federal claims under § 1983, see, e.g., Howlett ex rel Howlett v. Rose, 496 U.S. 356, 358 (1990), Plaintiff has not addressed the key question--whether the Georgia Tort Claims Act bars those of Plaintiff's claims that arise under state law, rather than § 1983. It is not incongruent to dismiss Plaintiff's state law claims while retaining the § 1983 claims, even though both sets of claims arise from the same course of conduct. See, e.g., Byrd v. Cavenaugh, 269 Ga. App. 612, 613-14, 604 S.E.2d 655, 657 (2004)(dismissing state law battery claim on immunity grounds but retaining Fourth Amendment excessive force claim). Plaintiff has simply not

15

addressed Defendants' substantive argument.

As Plaintiff does not dispute that Rich and Collins were acting in the scope of their official duties, the Court concludes that Rich and Collins are immune from liability on any state law tort claim. The Georgia Tort Claims Act immunizes state employees from liability arising from the performance of official duties. O.C.G.A. §§ 50-21-21(b); 50-21-25(a). The immunity afforded by the Georgia Tort Claims Act is a complete defense. Datz v. Brinson, 208 Ga. App. 455, 455, 430 S.E.2d 823, 823 (1993). Absent any reason to conclude that the Act does not apply, the state law claims should be dismissed.

### III. CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** that the motion for summary judgment (doc. nos. 4, 10) be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims under 18 U.S.C. § 2340, *et. seq.*, as well as his state law tort claims against Rich and Collins, should be dismissed. However, as Plaintiff has properly exhausted administrative remedies, his claims under § 1983 should not be dismissed at this time.

SO REPORTED and RECOMMENDED this 17th day of January, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

16