FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 JUN 25 AM 9:11

CLERK M A Hill
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

RANDY HOOKS,

Plaintiff,

v.                      605CV065

REGINALD T. LANGSTON,

Defendant.

## ORDER

### I. BACKGROUND

The issue in this excessive-force, 42 U.S.C. § 1983 case is whether defendant Reginald T. Langston abusively beat inmate-plaintiff Randy Thomas Hooks in violation of his Eighth Amendment rights. As an earlier Report and Recommendation (R&R) relates, Hooks brought this action on 7/13/05, alleging that on 10/11/03, RSP Corrections Supervisor Langston

> cuffed [Hooks's] hands behind his back, took him to a shower stall, and brutally beat him. (Doc. no. 1, pp. 3-4). Plaintiff also alleged that this beating was not an isolated incident, but that there was a "history, pattern, and practice" at Rogers in which inmates were taken to "shower stalls in lockdown isolation" and sadistically beaten. (*Id.* at 5). Furthermore, Plaintiff alleged that Defendant Collins, the Deputy Warden of Security at Rogers, and Defendant Rich, the Warden at Rogers, were not only "deliberately indifferent" to a "history, pattern, and practice of attacks," but that they actually were aware of and condoned repeated incidents of excessive force against inmates. (*Id.* at 5-6). Plaintiff's complaint sought compensatory and punitive damages, claiming that Defendants' actions amounted to torture in violation of 18 U.S.C. § 2340, *et. seq.*, exhibited cruel and unusual punishment in violation of the Eighth Amendment, and violated unspecified Georgia statutory and constitutional provisions. (*Id.* at 7-10).

Doc. # 83 at 1-2; *see also* doc. # 55 at 107-121.

This Court dismissed Hooks's 18 U.S.C. § 2340-based and state-law tort claims, but allowed his § 1983 claim to proceed. Doc. # 83 at 2. In its 3/28/07 Order, the Court adopted and rejected the R&R in part and pared this case down to an excessive-force claim against one defendant, Langston. Doc. # 106 at 14. A follow-up Order directed the parties to file all pretrial motions by a date certain. Doc. # 110.

### II. ANALYSIS

#### A. Motion In Limine

Langston now moves this Court to exclude from the forthcoming trial in this case:

> Testimony or evidence from witnesses (i) that did not personally observe any claimed use of force on Plaintiff Hooks, (ii) concerning unsubstantiated beatings, or (iii) advancing hearsay concerning alleged beatings.

Doc. # 111 at 1.

This part of Langston's *in limine* motion is granted. *See Graham v. Burns*, doc. # 219 at 5-6 (S.D.Ga. 5/17/07) (unpublished). He next seeks to exclude

[t]estimony or evidence regarding other alleged beating incidents amounting to impermissible character or propensity evidence.

Doc. # 111 at 2. As a general proposition, Langston is correct as this issue is framed; merely trying to show the jury that a party has bad character is not permitted. Here Langston focuses on his intent. *Id.* at 3 ("intent is not disputed"). He

> denies any use of force on Plaintiff once he was handcuffed for processing into segregation. Langston does not claim that he used force on Hooks for a proper purpose or that he accidentally used excessive force. Thus, the issue here, as was true in [cases Langston cites] is whether ... Langston made a conscious and deliberate decision to savagely beat an incapacitated inmate or not. That determination must be made based on the facts of the transaction between Hooks and Langston, and not on any transaction between Langston and other inmates.

*Id.* at 4. This Court in *Graham* noted Second Circuit precedent concluding that F.R.Evid. 404(b), prior bad acts evidence cannot be admitted if the issue is whether someone actually engaged in a particular act (did A bash B with a sledgehammer or not?). *Graham*, doc. # 219 at 5. This Court also concluded, however, that such evidence can come in to show that a prison official,

> as part of a common plan, routinely abused inmates to accomplish some nefarious end. Rule 404(b) evidence, it must be remembered, authorizes prior bad acts evidence to show 'motive, opportunity, *intent*, preparation, *plan*, knowledge, identity or absence of mistake or accident'. Fed.R.Evid. 404(b).'" *Jones v. Childers*, 18 F.3d 899, 913 (11th Cir. 1994) (emphasis added); Ann., 171 A.L.R. Fed. 483 § 7.

*Graham*, doc. # 219 at 6 (emphasis added).

Here there is no dispute that Langston committed the act of handcuffing Hooks. The only issue is whether he then beat Hooks abusively while, if not shortly after, handcuffing him. Cases from different circuits support each party's position here. For Hooks, *see Carson v. Polley*, 689 F.2d 562, 571-572 (5th Cir.1982) (in civil rights action against county sheriff, constable, and their deputies for alleged use of excessive force when arresting complainant and booking him into jail, failure to admit performance evaluation reports on deputy sheriffs, which commented that one needed to "work on controlling temper and personal feelings" and that second was "a good officer, however he needs to learn to control his temper," affected substantial rights of complainant and thus warranted reversal; the first report was admissible under Rule 404(b) to show intent to harm plaintiff, while other was admissible under Rule 608(b) to impeach).

For Langston, *see Hynes, supra* and *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir.2005) ("Other bad acts" evidence, regarding prior excessive force claims that had been filed against officer for using his police dog in connection with other arrests, was not admissible in excessive force case brought by suspected gang member, in order to show absence of mistake or accident or officer's modus operandi, where officer did not contend that he had accidentally or mistakenly ordered police dog to bite suspect, and there was no question regarding officer's identity; district court thus did not abuse its discretion in excluding evidence because "proof of a 'modus

operandi' is only relevant when there is an issue regarding the defendant's identity"), *cited in* 22 WRIGHT & MILLER: FEDERAL PRAC. & PROC. § 5239 (*Other Crimes, Wrongs, or Acts--General Rule*) (2007).

In *Carson*, the arrestee's (Carson's) theory was that the force used by the deputy sheriffs there was excessive and unjustified. The defendants denied applying abusive force (hence, they denied intent to do so) and in fact attempted to show that the deputies "responded coolly and reasonably to an obstreperous detainee." *Carson*, 689 F.2d at 573. One key issue, therefore, was whether the deputies reacted to Carson with excessive and unfettered hostility, or with reason and control. The Fifth Circuit thus viewed the issue, at least in part, as a matter of intent.

Were the performance evaluations relevant to that issue? *Id.* at 573. The *Carson* court reasoned that, assuming the relevance of the proffered evidence on the issue of intent, the evidence must then be subjected to the balancing test of F.R.Evid. 403. It noted

> [prior case law, which] directs us now to look at the incremental value of the extrinsic proof in showing intent, the similarity of the prior act to the charged act, with respect to intent, and the time elapsed between the extrinsic and the charged acts. Probative value must then be weighed against prejudicial impact: the power of the offense to "incite the jury to irrational decision by its force on human emotion."

*Id.* at 573. There were two performance evaluation reports at issue in *Carson* that concerned two defendants. The first, referring to defendant Holley, specified that the defendant needed to "work on controlling temper and personal feelings" because he tended to get "into arguments with inmates" and let "his temper flare up too quickly." *Id.* at 571. The court held this report admissible, noting that the report was "recent and specifically referred to Holley's relations with prisoners." *Id.* at 573. "It was of solid value in proving Carson's case, yet there were no horrifying details that would predictably inflame the jury's passion." *Id.* The second report, referring to defendant Ellis, indicated that Ellis "is a good officer, however he needs to learn to control his temper. This affects his public contact." Id. at 571-72. The court held that this report was properly excluded because it

> expressed only a general statement on Ellis' temper. It was recorded three years before the Carson arrest. It referred only in most general terms to "public contact," not solely with prisoners. The probative value of this report on Ellis' intent [thus] was slight. Because of the attenuated probative value, even the slight prejudice that the report might engender warranted excluding it.

*Id.* at 573-74.

The *Carson* rationale thus admits evidence of past adverse *information* (*e.g.*, that the party has a problem with controlling his violent propensity) to prove that that party actually committed an act (physically abusing an arrestee, as opposed to merely reacting "cooly and professionally"), so long as the information is not stale and overly prejudicial.

This is little different than what the Eleventh Circuit routinely sanctions in criminal cases, where A denies *intending* to illegally possess a gun and adverse information (like evidence of prior conviction for doing just that) then gets presented to a jury. *See, e.g., U.S. v. Taylor,*

417 F.3d 1176, 1182 (11th Cir. 2005) (in prosecution for firearm charges, defendant's prior conviction for being felon in possession of firearm was admissible to show that he knowingly possessed the firearm); *U.S. v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005) (a defendant's plea of not guilty can place the element of intent at issue, thus supporting admission of prior, similar-act *arrest* evidence).

Here Langston's denial that he abused Hooks, alone, may be said to support Rule 404(b) admission of similar abusive acts to show his intent. Yet, there is the Second Circuit's rationale found in *Chavez* and *Hynes v. Coughlin*, 79 F.3d 285, 290 (2d Cir. 1996) (inmate's §1983, excessive-force action against prison guards, held that although the inmate's disciplinary record might have been properly admitted in response to his argument that he had struck a guard reflexively and by accident, it was reversible error to admit the record where the plaintiff denied having struck the officer at all and he did not raise any issue of his intent, and the defendants repeatedly argued that the plaintiff's violent character tended to show he was the aggressor), *cited in Graham v. Rich*, 405CV080, doc. # 178 at 5 (S.D.Ga. 1/19/07).

The *Hynes* court concluded that "[w]here intent is in issue, evidence of other acts that bear on intent is properly admissible under Rule 404(b)." *Hynes*, 79 F.3d at 290. But in that case inmate plaintiff Hynes "did not testify that he kicked [defendant prison guard] Zemken by accident; rather, he denied kicking Zemken at all." *Id.* at 291. "A dispute as to whether or not a party performed a particular physical act at all is not an issue as to intent." *Id.* Thus, Hynes's disciplinary records (showing his violent behavior) were not Rule-404(b) admissible. *Id.* Admission of prior conduct to show pattern evidence, the *Hynes* court reminded, "is principally to show the identity of the perpetrator or the absence of accident or mistake." *Id.* at 291-92. Neither of those factors were present in that case. Plaintiff Hynes therefore was entitled to a new trial, especially since during trial defense counsel were explicit in offering Hynes's disciplinary records to show Hynes's "aggressive *character*" and thus that he was more likely than not the aggressor during the violent altercations on which he had sued. *Id.* at 292.

Here Langston heavily relies on *Hynes* and *Chavez*. Doc. # 111 at 2-4. Of course, that concept can be taken too far, as both intent to do an act at all versus intent *as to how that act was performed* (professionally versus abusively) can be semantically (if not hyper-technically) subdivided to a specious degree. Langston essentially does that here by (a) conceding that he intended to handcuff Hooks; but (b) denying that he abused Hooks while doing so; then (c) insisting that under *Hynes* and *Chavez* any Rule 404(b) evidence of his past similar abuses must be excluded.

Slicing the analytical bread that thin can leverage the "*Hynes*" distinction to preclude pretty much all Rule 404(b) evidence, and upon an abuse-defendant's mere denial that an act occurred. Gun-possessing criminal defendants in the Eleventh Circuit can't do that. In fact, if they deny that they intended to possess a gun when the law says they should not, the prior bad acts evidentiary spigot usually gets opened up on them. *Carson*, which applied prior precedent (*U.S. v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc)) binding on this Court -- precedent that bears a more flexible, Rule 404(b)/intent rule than what the Second Circuit applied in *Hynes* and *Chavez*[1] -- therefore shall be applied

---

[1] Under *Beechum*, a defendant's use of marijuana was held to be inadmissible in his prosecution for mail fraud,

4

here.

So viewed, the *Hynes* rationale would be a better fit if Langston claimed he swung and missed, or gave some other explanation that admitted intent to act while denying the act itself. Absent such a situation, denying the act is necessarily denying intent to commit the act. Here Langston denies abusing Hooks; he therefore denies not only the act of abusing Hooks but *also* his intent to do so. Thus,

> [s]imilar act evidence offered to show [Langston's] intent is admissible in [this] section 1983 case because [his] intent is a relevant element of the constitutional tort. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11 n. 1 (2d Cir.1988) (evidence of other instances where officer used excessive force admitted to show pattern and intent in constitutional tort case); [*Eng v. Scully*, 146 F.R.D. 74, 79 (S.D.N.Y. 1993)] (same); *see also Carson v. Polley*, 689 F.2d 562, 572 (5th Cir.1982) (holding that performance reports stating that defendant officer needed to " 'work on controlling temper and personal feelings' because he 'tends to get into arguments with inmates, lets his temper flare up too quickly' " were admissible to show officer's "intent to do harm to [plaintiff]" on the day in question).

*Lombardo v. Stone*, 2002 WL 113913 at * 6 S.D.N.Y. 1/29/02) (unpublished).

Under *Carson* and *Lombardo*, then, prior, similar beatings by Langston can be admitted to show Langston's intent to harm Hooks when he handcuffed him, so they will be admitted "under the 'intent' exception to the general rule against character evidence." *Carson*, 689 F.2d at 572. Of course, evidence passing Rule 404(b) muster is still subject to similarity[2] and Rule 403 prejudice-balancing requirements.

Plaintiff's prior abuse evidence also will be admitted if any prior, similar beatings were part of Langston's common pattern or plan to intentionally (rather than accidentally) abuse inmates under the guise or restraining them, and thus Hooks was but one of a series of routine victims. Evidence on that score would be relevant and not unduly prejudicial under F.R.Evid. 403 and 404(b).

But if any prior beatings do not fit these exceptions, then they will be excluded. The Court will evaluate the proposed evidence at trial and rule accordingly. For the moment, then, this part of Langston's motion is denied. Note, incidentally, plaintiff's F.R.Evid 608(b) option (*i.e.*, impeachment evidence). *See Carson*, 689 F.2d at 574-75; *Mazloum*, 2007 WL 1141581 at * 5 n. 8.

---

*U.S. v. Reed*, 700 F.2d 638, 645-46 (11th Cir. 1983), but homicide detectives' use of cocaine was Rule 404(b)-admitted to show, in a criminal RICO prosecution against them for, *inter alia*, drug-related crimes, evidence of those extrinsic offenses was relevant as relating to showing the acceptance of those detectives by drug suppliers into their criminal ventures. *U.S. v. Alonso*, 740 F.2d 862, 869 (11th Cir. 1984). The *Alonso* drug-use evidence need only go just beyond character evidence to show something else -- intent to join drug criminals in their trade. Here it may be said that the prior bad acts evidence is proffered to go just beyond Langston's character -- that he intended to abuse, rather than merely handcuff, Hooks.

---

[2] *See Mazloum v. District of Columbia Metropolitan Police Dept.*, 2007 WL 1141581 at ** 4-5 (D.D.C. 4/17/07) (unpublished); *Lombardo v. Stone*, 2002 WL 113913 at * 5 S.D.N.Y. 1/29/02) (unpublished) ("A series of wrongful acts do not follow a pattern, or qualify as a person's *modus operandi*, unless the acts share unusual characteristics with the act charged or represent a unique scheme" (quotes and cite omitted)).

5

Next, the Court agrees with this defendant that inmate testimony about alleged beatings of them by *other* guards should be excluded, doc. # 111 at 5 & n. 1, unless Hooks can show that Langston's alleged beating of him was part of a common plan or scheme of which this beating was an inextricable part and legally connective tissue (a conspiracy, for example, which has not been alleged) envelopes Langston.

Langston also moves to exclude "reputation" evidence. Doc. # 111 at 5-6. As this Court stated in *Graham*:

> F.R.Evid. 404(b), however, is not implicated at all in "reputational" questioning. *See U.S. v. LaVallee*, 439 F.3d 670, 695 (10th Cir. 2006) (prosecutor's questioning of witness regarding whether witness knew if defendants had a reputation for unnecessarily violent behavior while working as prison guards did not violate Rule 404(b); questions did not refer to specific instances of conduct, and the witness testified only that he had information about whether the defendants had such a reputation, not what that reputation was).

*Graham*, doc. # 219 at 3. Thus, the Court denies Langston's motion on this issue, but reminds Hooks that questions along this line must be carefully framed. *Id.*; *compare Ruffin v. City of Boston*, 146 Fed.Appx 501, 508 (1st Cir. 2005) (In § 1983 action by arrestee against arresting officers alleging use of excessive force, trial court did not abuse its discretion in excluding evidence concerning officer's reputation or prior bad acts; although evidence of other instances in which officer allegedly used excessive force might have been helpful to arrestee in swaying the jury, there was also a risk that, despite any limiting instructions, jury would have used the evidence not just to evaluate officer's truthfulness, but also to establish a propensity for such conduct, and district court was in best position to determine whether risk of unfair prejudice would outweigh legitimate uses of the evidence)[3] *with U.S. v. Taylor*, 417 F.3d 1176, 1178 (11th Cir. 2005) (In prosecution for drug possession and firearm charges, trial court did not abuse its discretion in refusing to allow defendant to cross-examine officer, who testified that he

---

[3] This area is laced with subtle nuances. *See generally* 28 WRIGHT & MILLER, FEDERAL PRAC. & PROC. § 6117 (2007) (*General Rule of Subdivision (b)--Extrinsic Evidence of Specific Instances of Conduct Is Inadmissible to Prove Character*) (2007) ("Deciding the admissibility of such evidence is complicated"). The *Ruffin* court elaborated on its ruling:

> [Plaintiff-arrestee] Ruffin never explained, either to the district court or in his appellate brief, whether he meant to offer evidence of [defendant police officer] Williams's reputation for truthfulness or his reputation for violence. However, at trial Ruffin's counsel explained that the basis for admitting reputation evidence was Rule 404. The only basis under Rule 404 for admitting evidence of a civil defendant's reputation is Rule 404(a)(3), which permits, *inter alia*, evidence of a witness's character for *truthfulness* pursuant to Rule 608(a). Consequently, we assume, for purposes of this appeal, that Ruffin intended to introduce evidence of Williams's reputation for truthfulness. Evidence of a reputation for violence would probably not have been admissible under any rule; reputation evidence "may refer only to character for truthfulness or untruthfulness." Fed.R.Evid. 608(a)(1) (emphasis added).

*Ruffin*, 146 Fed.Appx at 509 n. 5.

found drugs on defendant in search incident to arrest, regarding prior citizens' complaints alleging harassment, planting evidence and brutality, in order show officer had racial bias and had motive to lie; internal affairs division had determined complaints to be unfounded, and brutality had not been alleged).

Langston next argues that the Court should exclude evidence that he was

> disciplined for violation of Department of Corrections rules and/or regulations and likely violated the system's rules and/or regulations in connection with his handling of Plaintiff Hooks. This is precisely the type of evidence that must be excluded under F.R.Evid. 404(b). See, e.g., *Ruffin v. City of Boston*, 2005 WL 2116371, *4 [146 Fed.Appx 501] (1st Cir. 2005) (Inference that arresting officer was disciplined and terminated for unrelated incidents and therefore likely at fault for subject incident is precisely the type of inference prohibited by Federal Rules of Evidence).

Doc. # 111 at 6-7. Note that the *Ruffin* case focused on *unrelated* incidents. Even at that, it was not *per se* error:

> [T]he inference that Ruffin wished to raise -- that because Williams had been terminated for an *unrelated* incident, he was probably at fault in this incident too -- is precisely the type of inference that the Federal Rules of Evidence seek to prevent a party from raising. While the specific question that Ruffin wanted to ask was not so blatantly prejudicial that the district court was required to exclude it, the court certainly was not required to permit it either, and did not abuse its discretion in excluding it.

*Ruffin*, 146 Fed.Appx at 508 (emphasis added).

The Court is mindful of the fact that

> [e]ven evidence admissible under Rule 404(b) is subject, however, to the limitations of Federal Rule of Evidence 403. See *West v. City of Philadelphia*, 1988 WL 21955, *2 (E.D.Pa. Feb.29, 1988), *citing* Fed.R.Evid. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....").

*Whichard v. Baylor*, 2004 WL 1490360 at * 1 (E.D.Pa. 7/1/04) (unpublished). At a minimum, an adverse Georgia Department of Corrections (GDOC) finding, contained within a disciplinary action of some sort against Langston, can be referenced as Rule 608 impeachment. See *Carson*, 689 F.2d at 574-75; *Lombardo*, 2002 WL 113913 at * 6. Thus, Langston's motion is denied on this item. Hooks must remember, however, that "[e]xcept for criminal convictions, specific instances of conduct may not be proved by extrinsic evidence in this context. See Fed.R.Evid. 608(b)." *Lombardo*, 2002 WL 113913 at * 6.

As for admissibility of the GDOC finding as substantive evidence of impeachment, the Court will hear further argument at trial, if necessary. The Court agrees that evidence about previous *allegations* from other cases should be excluded from trial. Doc. # 111 at 7. And, it agrees that Hooks may not sneak medical-causation evidence into this case by way of his own lay testimony, *id.* at 7-8, though the Court previously "agree[d] with Hooks that treating physician testimony is admissible on plaintiff's claimed physical injuries." Doc. # 106 at 14.

7

## B. Trial Exhibit Objections

The Court agrees with Langston that Hooks should not be permitted to adduce his prison grievance form absent a prior-consistent statement foundation. Doc. # 112 at 1-2. Furthermore, the form bears inadmissible hearsay in violation of F.R.Evid. 802, and is otherwise excludable under Rule 403.

The prison's incident report (doc. # 112 at 2) is perhaps admissible as a business record, subject to foundation requirements, though it might be used to refresh someone's memory, *see Parker v. Reda*, 327 F.3d 211, 212-15 (2nd Cir. 2003), but the better practice here will be to err on the side of exclusion. Thus, the Court excludes it here. Plaintiff's exh. P-3 (medical reports) also is excluded, as are P-4 and P-5 (Hooks's non-contemporaneous, narrative statements); P-6 (his grievance form and response); and P-14 to P-18 & P-20 to P-23 (other inmates' narrative statements).

## C. Tommy Cardell

Langston's *in limine* motion makes no mention of former RSP guard Tommy Cardell, though in his Objections to Plaintiff's Exhibits he objects to "Plaintiff's Exhibit P-19: Affidavit of Tommy Cardell." Doc. # 112 at 5. Hooks's opposition response brief represents that Cardell will be available for live testimony, yet "[p]laintiff anticipates using the affidavit of Tommy Cardell to be introduced as part of his testimony and will not be used as hearsay without the testimony of Tommy Cardell." Doc. # 114 at 2.

The Court finds that insistence (that the affidavit will not be used as hearsay) strange to say the least. Note, too, that in *Graham* this Court cited Cardell's affidavit attesting that, "while employed at RSP from 3/02 - 8/05, he witnessed (until he was placed on leave *in 5/03*) inmate beatings in the A-3 and A-4 showers areas, then saw the victims placed in isolation until their wounds healed...." *Graham*, 405CV080, doc. # 178 at 8 n. 9 (emphasis added).

Yet here Hooks claims he was beaten on 10/11/03 -- *five months* after Cardell departed the scene. So Cardell's testimony is temporally attenuated to begin with, and Hooks *himself* concedes (though this may just be poor writing in his brief) that Cardell does not think Langston intentionally abused any inmates:

> Although Tommy Caudell [sic] went on the say that he did not think that Defendant intentionally abusing inmates [sic], he was a witness to the abuse [by other guards?] of both Plaintiffs Hooks and Jamison as well as other inmates.

Doc. # 114 at 2.

The Court sustains Langston's Objection to the use of Cardell's affidavit at trial.

## D. Shinholster Deposition

Hooks moves the Court for leave to introduce witness Christopher Shinholster's testimony by deposition. Doc. # 116. He states that Shinholster's deposition was taken on 3/21/07, Langston's counsel was present and had an opportunity to cross-examine, and Shinholster resides beyond this Court's subpoena power. *Id.* at 1-2.[4] Filed just days

---

[4] A federal court's subpoena power is conditional:

> The subpoena power of a federal district court in a civil suit reaches throughout the district, and also as far as 100 miles from the site of the

before trial, this motion must be addressed without benefit of an opposing brief. Based on its own research, the Court grants the motion. *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1019 (9th Cir. 2004) (deposition testimony of insurance expert from another case was admissible as testimony of unavailable witness, where expert was outside court's subpoena power and partner of opposing party's attorney had cross-examined expert at deposition and had similar motive to develop testimony); *U.S. v. Samaniego*, 345 F.3d 1280, 1283 (11th Cir. 2003) (in interpleader by government to determine whether championship belts earned by Roberto Duran had been stolen when found in possession of Louis Baez, admitting apology by Bolivar Iglesias for stealing belts, which fit against-interest exception; Iglesias was citizen of Panama living there, hence beyond subpoena; Duran enlisted help of family to persuade him to testify, but could not find him; mother testified that she tried to contact him but was unable to), *cited in* 5 FEDERAL EVIDENCE § 8:114 (3d ed. May 2007) (statements offered as former testimony, a declarant is unavailable if he is absent and the proponent could not, pursuant to F.R. Evid. 804(a)(5), procure his attendance or testimony by process or other reasonable means); *Tracinda Corp. v. Daimler Chrysler AG*, 362 F.Supp.2d 487, 503 (D.Del. 2005) (admitting deposition testimony of out-of-state witness where defendants had the opportunity to test the accuracy of her statements via cross examination at the deposition).

However, this testimony is subject to Langston's relevancy objections, as sustained by this Court. Thus, if all this testimony is being offered for is to show that *other guards* abused prisoners, then it will be excluded, since there are no party liability allegations in this case (*e.g.*, that Langston was part of a conspiracy to abuse inmates and thus co-conspirator acts may be admitted to prove his conspiratorial participation).

### III. CONCLUSION

Accordingly, the Court *GRANTS* in part and *DENIES* in part defendant Reginald T. Langston's motion *in limine*. Doc. # 111. His Objections (doc. # 112) to plaintiff Randy Thomas Hooks's trial exhibits are *SUSTAINED*. Finally, the Court *GRANTS* Hooks's deposition-admission motion, doc. # 111, but *DENIES* as moot his motion for production of witnesses (doc. # 113) because the Deputy Clerk informs the Court of an

---

proposed testimony even if that radius reaches beyond the boundaries of the district ("bulge" service). The subpoena power reaches further than that if statute authorizes it, as some specific provisions do. In addition, there is a broad statute that authorizes a subpoena requiring any United States "national or resident" in a foreign country to return and appear in a civil trial if the court finds her testimony is "necessary in the interest of justice" and cannot be obtained "in admissible form" without her appearance, but this provision is seldom used in civil suits because the testimony of such a person can be more easily had "in admissible form" in deposition taken abroad by commission or letter rogatory.

5 FEDERAL EVIDENCE § 8:114 (3d ed. May 2007) (footnotes omitted).

informal work-around for that item (the State will transport those witnesses to trial).

This 25th day of June, 2007.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA